HEARDEN, Respondent, vs. STANDARD ACCIDENT INSURANCE COMPANY, Appellant.

*November 9—December 7, 1954.*

For the appellant there was a brief by *Kleczka & Frisch* of Milwaukee, and oral argument by *John B. Frisch*.

For the respondent there was a brief and oral argument by *Harry Halloway* of Milwaukee.

FAIRCHILD, C. J.    The collision occurred about 7 p. m. on November 2, 1952. The weather was clear and dry. James Novak, an employee of the Salvation Army was driving one of its trucks in an easterly direction on Highway 100. With him as passengers were Chris. Hearden, Jr., respondent, and

one Roy Hult. Chris. Hearden was sitting between the other two men. At the point of impact the highway runs east and west and is 18 feet wide, with a two-foot shoulder to the south. An Oldsmobile driven by the impleaded defendant, Louis Pongratz, approaching the truck from the rear and traveling at the excessive speed of 70 miles per hour, struck it at the left rear corner. The front of the truck was forced to the south of the road, or to the truck driver's right, and stood with its nose partially in the ditch and wheels in the air. The Oldsmobile, after the accident, was lying in the west-bound lane 300 feet northeast of the truck.

The respondent argues that the evidence presented by him raises a jury issue of causal negligence on the part of appellant's assured, contending that the driver of the truck was "causally negligent in failing to keep a lookout ahead of the road, the edge of the road, and the edge of the shoulder, when he turned to the right to look at the plaintiff as the plaintiff said he was doing when the truck swerved." He further maintains that the driver of the truck "could not avoid the effect of such causal negligence by proof that he had not changed his speed or invaded another lane at the time the truck started to swerve." Respondent bases his contention upon his testimony that the driver of the truck accepted a cigarette from one of the passengers. Respondent testified: "Just before the impact occurred James Novak, the driver, asked for a cigarette. I couldn't reach any in my pocket, sitting in the center. Roy Hult handed me a cigarette and I handed it to Novak. Novak then asked for a match and Roy Hult handed me a book of matches and I handed them to Novak. He turned and looked at me and the car swerved. There was an impact and we went end over end in the ditch. I did not see any car approaching from the rear. The truck was struck from the back corner on the left-hand side." Novak, although he did not deny taking a cigarette, could

not recall doing so. The only testimony offered, then, to show that the driver was negligent as to lookout and management and control is that of the respondent, Hearden, to the effect that because Novak turned momentarily to look at him (Hearden), the truck swerved, and therefore the driver was causally negligent as to those items. However, respondent Hearden could not testify as to the speed of the truck at the time of and prior to the collision. He was unable to testify as to where the truck was on the highway at any time prior to the collision. His testimony that the truck driver turned to look at him and at the same moment the car swerved and there was an impact is not evidence that appellant's insured left his lane of travel at any time until after his truck was struck from behind.

Furthermore, the evidence of the only disinterested eye-witnesses, Albert Schroeder and Matt Strupp, is to the effect that they followed the truck for some distance before both vehicles reached the North Shore tracks intersecting Highway 100, and that as the truck went over the tracks, the Pongratz Oldsmobile passed the vehicle in which these two witnesses were riding, at a high rate of speed. Their testimony concerning the course of the Pongratz Oldsmobile as it crossed the North Shore tracks following the truck is that the Pongratz car came up from behind and collided with the left rear corner of the Salvation Army truck while the truck was in its proper lane and proceeding at a proper speed. Their testimony as summarized in the appendix is:

"As we were traveling east on Highway 100 we came upon the scene of an accident and saw a truck lying in the ditch and an Oldsmobile quite a ways down the road. Half of the truck was lying on the shoulder of the road with the wheels up in the air. The ditch was to the right of us. The Oldsmobile was lying on the westbound lane quite a ways down the road east of the tracks and when I got there the truck driver just

opened the door and was helping one of the fellows out of the cab. The driver of the Oldsmobile was just crawling out of his car. The vehicles were not moved before the sheriff's deputies arrived. Before we came upon the scene of the accident we had been following the truck that was in this accident quite a ways down the road and the truck had just crossed over the North Shore tracks when the Oldsmobile passed us. The truck was then 100 to 150 feet ahead of us. The Oldsmobile was going very fast when it passed us. When the rear wheels of the Oldsmobile hit the North Shore tracks it flew through the air and turned right over in the air. All we saw were just sparks and dust right after that." Schroeder also testified as to the speed of the Oldsmobile and estimated it as 70 miles per hour.

The respondent relies upon a written report of a traffic officer which was received in evidence without objection. Such report stated Pongratz' version of how the accident happened, it being his statement that as he attempted to pass the truck it suddenly swerved in his path. The physical facts show that the front of the Pongratz Oldsmobile struck the left rear corner of the truck. There is no evidence that Novak swerved sufficiently, if at all, to take the truck north of the center line of the highway, nor is there any evidence that Pongratz blew his horn or otherwise made known to Novak his intention to pass. The report relied upon by respondent, therefore, fails to establish any negligence on the part of Novak.

The momentum of the Oldsmobile is evidenced by its position after the collision 300 feet northeast of the place where the truck came to rest, on the north side of the highway, facing in an east by southeast direction. The truck was partly on the south shoulder, with its nose in the ditch and facing north. The location of the point of impact was the left rear corner of the truck. With these physical facts and the above testimony establishing that the truck did not invade

the north lane of travel, that it was struck from behind on the left rear corner by the front of the Pongratz car, and that the Pongratz car was traveling at an excessive rate of speed, we have a complete explanation of how the accident happened and how the truck was propelled into the position in which it was found by centrifugal force, without any negligence on the part of the truck driver. The evidence establishes that the sole cause of the collision was the fact that the Pongratz car was out of control and does not sustain the jury's findings that appellant's insured was causally negligent as to lookout and management and control. The judgment must therefore be reversed.

*By the Court.*—Judgment reversed, cause remanded with directions to change the answers to questions finding the defendant guilty of negligence from "Yes" to "No" and to enter judgment dismissing the complaint as against this defendant.